UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/30/2026

MARTIN J BENZING and ANNASTACIA
BENZING,

                              Plaintiffs,

                -against-

TULLY CONSTRUCTION CO, INC. et al.,

                              Defendants.

_____

TULLY-POSILLICO JV et al.,

                              Third-Party Plaintiffs,

                -against-

STRUCTURAL SERVICES, INC.,

                              Third-Party Defendant.

21-CV-05315 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

On August 20, 2019, Plaintiff Martin J. Benzing visited a construction site on the Bruckner Expressway. During the visit, he climbed down a ladder and suffered a head injury. This case concerns the cause of Mr. Benzing's injury and which entities bear responsibility for any damages Mr. Benzing suffered. Mr. Benzing and his wife, Annastacia Benzing, allege that Defendants and Third-Party Plaintiffs Tully-Posillico JV, Tully Construction Co., Inc., and Posillico Civil, Inc. (together the "JV Defendants") violated three provisions of the New York Labor Law ("NYLL")—Sections 240(1), 241(6), and 200—as the contractors, the owners, or their agents, of the construction site where the incident took place. *See* Dkt. No. 168 at 4-6. They also bring claims against the JV Defendants for negligence and loss of consortium. *Id.* at 6–8. The JV Defendants, in turn, bring claims for contribution, indemnification, and breach of

1

contract against Third-Party Defendant Structural Services, Inc ("SSI").  Plaintiffs moved for summary judgment only on the NYLL claims and the JV Defendants and SSI cross-moved for summary judgment on all claims.  Plaintiffs and the JV Defendants have also moved to preclude each other's expert witnesses under *Daubert v. Merrell Dow Pharmaceuticals*.  For the reasons set forth below, the summary judgment motions are DENIED and the *Daubert* motions are GRANTED in part and DENIED in part.

## BACKGROUND

## I.   RELEVANT FACTS[1] & PROCEDURAL HISTORY

### A. The Relevant Contracts for the Bruckner Project and the Relationship Between the JV Defendants and SSI

In 2009, Defendants Tully Construction Co., Inc. and Posillico Civil, Inc. entered into a Joint Venture Agreement.  Dkt. No. 201 ¶ 6; Dkt. No. 166-16.  In December 2017, the New York Department of Transportation selected "Tully–Posillico JV" as the design-builder of a project titled "Bruckner Viaduct Deck Replacements" (the "Bruckner Project").  Dkt. No. 166-1 at 1–2. On October 16, 2018, the Department of Transportation approved a request by the JV Defendants to employ SSI as a subcontractor on the Bruckner Project.  Dkt. No. 201 ¶ 14; Dkt. No. 166-3 at 1.  Attached to the approval is a form titled "Approval to Subcontract."  Dkt. No. 166-3 at 2.  The approval form indicates that the approval is for the "Region 11 Bruckner Bridge Deck (Design/Build)" contract.  *Id.* The approval form also lists the types of work that SSI, as the subcontractor, could perform.  *Id.*  Both the JV Defendants and SSI appear to have signed the approval form in August 2018.  *Id.*  The parties also submitted as evidence a contract between the JV Defendants and SSI.  *See id.* at 3.  However, the parties dispute whether that contract was

---

[1] The following facts are taken from the parties' Joint Statements of Undisputed Facts and from the parties' declarations and exhibits.

in effect at the time of Mr. Benzing's accident; although the contract is dated March 9, 2018, the SSI signature on the contract is dated June 16, 2021. *Id.* at 3–7; Dkt. No. 197 ¶ 2.

### B. The August 20, 2019 Accident

Mr. Benzing is the former Director of the Deck and Stud Division at Defendant SSI, a construction company. Dkt. No. 201 ¶ 15. In this role, Mr. Benzing regularly visited SSI worksites to "meet with customers, monitor progress, address sequencing or manpower issues, and address any other concerns or issues." *Id.* The incident in this case took place during one such site visit. On August 20, 2019, Mr. Benzing visited an SSI worksite for the Bruckner Project, located on an elevated bridge deck of the Bruckner Expressway. Dkt. No. 192 ¶¶ 40, 44–45. It is undisputed that SSI's worksite could only be reached by climbing a ladder, and that, after visiting the worksite, Mr. Benzing began to descend that ladder and was subsequently injured when he hit his head on a beam. Dkt. No. 197 ¶¶ 10, 15; Dkt. No. 201 ¶ 19. The parties' versions of events differ greatly from there. Plaintiffs claim that the ladder "shifted" while Mr. Benzing was descending it, causing him to lose his balance, fall, and strike his head on a beam. Dkt. No. 193 ¶ 15. The JV Defendants, on the other hand, allege that Mr. Benzing's injury occurred after he "finished descending the ladder when he carelessly turned around and struck his forehead on a beam that was located near the ladder." Dkt. No. 182 at 12.

### C. Procedural History

Plaintiffs initiated this action on August 16, 2021, bringing various claims under New York Labor Law, common-law negligence, and loss of consortium. Dkt. Nos. 1, 155. On October 5, 2021, the JV Defendants filed a third-party complaint against SSI. *See* Dkt. No. 20. The JV Defendants bring four causes of action against SSI, for contribution, contractual and common-law indemnification, and breach of contract for failing to procure proper insurance and failing to indemnify the JV Defendants. On May 22, 2025, Plaintiffs moved for partial summary

3

judgment on their New York Labor Law Section 240(1) and 241(6) claims. Dkt. No. 164. On May 23, 2025, the JV Defendants and SSI cross-moved for summary judgment on all claims in both the Plaintiffs' complaint and the Third-Party Complaint. *See* Dkt. Nos. 177, 181. Additionally, the JV Defendants moved to exclude certain photographs Plaintiffs produced in discovery. Dkt. No. 181. Finally, the JV Defendants moved to preclude the testimony of Plaintiffs' expert Jason Randle, and Plaintiffs moved to preclude the testimony of Defendants' experts William J. Meyer and Robert S. Cargill. *See* Dkt. Nos. 185, 170, 174.

## DISCUSSION

### I.    LEGAL STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123 (2d Cir. 2014).[2] A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a judgment for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Where, as here, the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can 'point to an absence of evidence to support an essential element of the nonmoving party's claim.'" *Gemmink v. Jay Peak Inc.*, 807 F.3d 46, 48 (2d Cir. 2015) (quoting *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995)).

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes and omissions, and adopt alterations.

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). To defeat a motion for summary judgment, a non-moving party must advance more than a "scintilla of evidence," *Anderson*, 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in his pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). "But [a] motion for summary judgment must be rejected if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016).

## II.    SUMMARY JUDGMENT IS DENIED ON PLAINTIFFS' NYLL SECTION 240(1) CLAIM

### A.  Mr. Benzing Is Covered by NYLL Section 240(1)

Count One of the Complaint asserts a claim against the JV Defendants under NYLL Section 240(1). NYLL Section 240(1) requires "contractors and owners and their agents . . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" to "furnish or erect, or cause to be furnished or erected for the performance of such labor . . . ladders . . . and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." The statute imposes strict liability on owners, contractors, and their agents "if they fail to provide this type of safety equipment and if such failure implicates certain hazards that, in turn, proximately cause injury." *Corrales-Patino v.*

*Procida Constr. Corp.*, No. 19-CV-05579 (ER), 2021 WL 5331528, at *5 (S.D.N.Y. Nov. 15, 2021). In promulgating this law, the "legislature's intent was to protect workers by placing ultimate responsibility for construction safety practices on the owner and general contractor instead of on workers." *Id.*

As an initial matter, Mr. Benzing is afforded the protection of this statute. It is undisputed that Mr. Benzing's role at SSI involved addressing various issues on construction sites where SSI workers were present. Dkt. No. 201 ¶ 15. It is also undisputed that, on the date of the incident, Mr. Benzing went to the Bruckner Project, where SSI was installing decking as a subcontractor, to address issues concerning SSI's ongoing work on the Project. Dkt. No. 193 ¶ 6; Dkt. No. 201 ¶ 17. To reach the SSI worksite at the Bruckner Project, Mr. Benzing was required to ascend a ladder to access the portion of the bridge decking where SSI was performing its work. *Id.* ¶ 7. In sum, Plaintiff was on the Bruckner Project construction site on the day of the incident so that he could address issues concerning the work being performed by a subcontractor on the construction site, and he climbed a ladder in furtherance of the performance of that work. In this respect, Plaintiff's role at the time of the incident was most analogous to a construction site supervisor or inspector.

The New York Court of Appeals has advised that "the question [of] whether a particular inspection falls within section 240(1) must be determined on a case-by-case basis, depending on the context of the work." *Prats v. Port Auth. of New York & New Jersey*, 800 N.E.2d 351, 354 (N.Y. 2003). This analysis "requires an inquiry into whether the work (a) fell into a separate phase easily distinguishable from other parts of a larger [construction] project and occurred after the [construction] was completed or (b) was 'ongoing and contemporaneous' with other work that formed part of a single [construction] project or contract." *Martinez v. Hitachi Const. Mach.*

6

*Co.*, 829 N.Y.S.2d 814, 828 (Sup. Ct. 2006) (quoting *Prats*, 800 N.E.2d at 354). Courts also consider whether the inspector or contractor "was performing essential on-going inspections of its work . . . during the course of [construction]." *England v. Vacri Const. Corp.*, 807 N.Y.S.2d 669, 670 (2005).

Here, Mr. Benzing's work falls within the protection of section 240(1). He was employed by a company that was engaged in an enumerated activity under the statute by performing repair work on the Bruckner Expressway. Based on the undisputed record in this case, Mr. Benzing ascended a ladder as the only means to access the work site where SSI was installing decking, so that he could assess and monitor various aspects of the project. *See* Dkt. No. 193 ¶¶ 6–7. Accordingly, he was performing an inspection that was "ongoing and contemporaneous with other work . . . that formed part of a single [construction] project," *Martinez*, 829 N.Y.S.2d at 828. Furthermore, by virtue of his inspection and supervision work, Mr. Benzing was "exposed to the risks inherent in an elevated work site," *Campisi v. Epos Contracting Corp.*, 747 N.Y.S.2d 218, 221 (2002). Under these circumstances, Mr. Benzing's worksite visit on the day of the incident is covered by section 240(1).

The cases cited by the JV Defendants are inapposite. Defendants primarily rely on *Martinez v. City of New York*, 712 N.E.2d 689 (N.Y. 1999), a case in which the New York Court of Appeals held that an environmental inspector was not covered by section 240(1). Central to that Court's holding, however, was the fact that the inspector's work was "investigatory, and was to terminate prior to the actual commencement of any [construction] work." *Id.* at 692. In so ruling, the court specifically noted that "none of the activities enumerated in the statute was underway, and any future repair work would not even be conducted by [Plaintiff's employer], but by some other entity." *Id.* In contrast, Mr. Benzing's employer was engaged in covered

7

work at the time of his injury. The circumstances of Mr. Benzing's accident are thus easily distinguishable from the circumstances relevant to the court's holding in *Martinez*. The JV Defendants also argue that the NYLL categorically does not apply to executives and therefore cannot apply to Mr. Benzing. *See* Dkt. No. 182 at 6. However, "it is now undisputed that executives are generally covered by the protections of the New York Labor Law." *Wagner v. Edisonlearning, Inc.*, No. 09-CV-00831 (SAS), 2009 WL 1055728, at *1 (S.D.N.Y. Apr. 17, 2009). Accordingly, whether Mr. Benzing is properly categorized as an "executive" has no bearing on whether he is entitled to the protections of the New York Labor Law provisions at issue in this case, so long as he was engaged in covered activity, which the Court finds that he was. !

### B. Factual Questions About the Ladder's Safety Preclude Summary Judgment on Plaintiffs' Section 240(1) Claim

To make a *prima facie* case of a violation of section 240(1), a plaintiff must provide sufficient evidence to establish that "the device in question did not offer proper protection" and that the "violation was a proximate cause of his injuries." *Moldovan v. Prestige Constr. NYC, LLC*, No. 20-CV-4699 (EK) (VMS), 2025 WL 964002, at *3 (E.D.N.Y. Mar. 31, 2025). Once a plaintiff has made such a showing, "the burden shifts to defendants to present evidence that the ladder was adequately secured or that [the plaintiff's] conduct was the sole proximate cause of his injuries." *Varga v. Flowcon, Inc.*, No. 22-CV-07477 (ER), 2025 WL 2774261, at *18 (S.D.N.Y. Sept. 29, 2025) (quoting *Moldovan*, 2025 WL 964002, at *5).

Here, Plaintiffs have met their *prima facie* burden. Mr. Benzing testified that when he was climbing down the ladder, "the ladder shifted" and he "lost [his] balance and fell." Dkt. No. 166-5 at 149:21–22. His testimony concerning the ladder is corroborated by Wayne McDonald, the superintendent of the Bruckner Project, who testified that the ladder "shifted when it fell into

8

the deviation of the corrugated metal that it was setting on." Dkt. No. 166-7 at 103:3–4; 307:4. Furthermore, Plaintiffs provide the expert testimony of a civil engineer who concluded that the ladder "was improperly set in place and maintained improperly without properly leveled ladder feet and without being properly secured." Dkt. No. 166-22 at 19. Where, as here, "a plaintiff establishes that an unsecured ladder shakes and moves, causing the fall giving rise to the injury, he has established a *prima facie* case that the ladder did not provide him with proper protection, in violation of NYLL § 240(1)." *Lewis v. Lendlease (US) Constr. Lmb Inc.*, No. 18-CV-8662 (LJL), 2021 WL 5762419, at *5 (S.D.N.Y. Dec. 2, 2021).

Although Plaintiffs have met their initial burden, the Court cannot grant summary judgment to either party because the JV Defendants have introduced evidence that the ladder was properly secured and that casts doubt on Plaintiffs' version of events. The JV Defendants offer the testimony of Jed Pittsley, a foreman at SSI, who testified that the ladder was "secure and tied off" and "safe." Dkt. No. 184-32 at 10:10–12, 70:16–17, 71:2–14. He also testified that he performed a stability check on the ladder, which included placing his weight on the ladder to confirm that it was stable. *Id.* at 71:15–25. The JV Defendants also offer the expert testimony of bioengineer Robert S. Cargill who testified that "[t]he ladder mechanics and the physical evidence are inconsistent with the bottom of the ladder sliding or kicking out at the time of the subject incident." Dkt. No. 184-37 at 21. Together, these pieces of testimony create triable issues of fact over (1) whether the ladder was properly secured and offered "proper protection" and (2) the cause of Mr. Benzing's injury, both of which preclude summary judgment for either party. *See Csikos v. 230 Park S. Apartments, Inc.*, No. 22-2882-CV, 2024 WL 276720, at *2 (2d Cir. Jan. 25, 2024) (Plaintiff "was not entitled to summary judgment because a factual question still remained as to whether the ladder did not provide appropriate protection or whether instead

9

[Plaintiff] lost his footing while descending, or if some other sequence of events occurred that bears on the proximate cause element of his unfortunate fall."). Accordingly, both summary judgment motions are DENIED as to Plaintiffs' Section 240(1) claim.

### III. SUMMARY JUDGMENT IS DENIED ON PLAINTIFFS' NYLL SECTION 241(6) CLAIM

NYLL Section 241(6) "requires owners and contractors, and their agents, to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor." *Ronquillo v. Lehman Bros.*, No. 06-CV-01219 (CM), 2008 WL 217082, at *3 (S.D.N.Y. Jan. 18, 2008). "A defendant is liable under § 241(6) if the defendant violated a safety regulation that set forth a specific standard of conduct, and the violation was the proximate cause of plaintiff's injuries." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d 202, 210 (2d Cir. 2014).

Plaintiffs claim that the JV Defendants violated 12 NYCRR §§ 23-1.21(b)(4)(i) and (ii). Dkt. No. 165 at 27. These sections concern the installation of ladders. Section 23-1.21(b)(4)(i) requires, *inter alia*, that "any portable ladder used as a regular means of access between floors or other levels in any building or other structure shall be nailed or otherwise securely fastened in place." Section 23-1.21(b)(4)(ii) states "[a]ll ladder footings shall be firm" and prohibits "[s]lippery surfaces and insecure objects such as bricks and boxes" from use as ladder footings.

There is insufficient evidence in the record to conclude that the JV Defendants violated section 23-1.21(b)(4)(i) as a matter of law. First, Plaintiffs do not dispute that the ladder was tied with a piece of tie-wire, *see* Dkt. No. 201 ¶ 34, but argue that the use of such wire entitles them to judgment as a matter of law, Dkt. No. 165 at 27. However, the case Plaintiffs cite in support of that proposition, *see id.*, did not grant summary judgment based on the use of a tie-wire. Rather, the court granted summary judgment because the record conclusively established that

"the tie wire was loose, which allowed the ladder to shift from side to side." *Pinckney v. 701 Seventh Prop. Owner, LLC*, 116 N.Y.S.3d 867 at *6 (N.Y. Sup. Ct. 2019). Here, whether the ladder shifted and whether the tie-wire was sufficient for the ladder to be "securely fashioned in place" remains in dispute. For example, while Mr. Benzing testified that he felt the ladder shifting as he descended, Defendants offer testimony that the ladder was "secure and tied off," Dkt. No. 204 at 11; Dkt. No. 184-32 at 71:5–6, and that photographs taken after the accident are inconsistent with any sliding or shifting of the ladder, Dkt. No. 184-37 at 21. This testimony creates a triable issue of fact over whether the ladder was "securely fastened in place" as required under section 23-1.21(b)(4)(i).

On the other hand, the record establishes a violation of Section 23-1.21(b)(4)(ii). As to this section, Plaintiffs offer the testimony of Thomas Smith, JV Defendants' site safety supervisor, who took photos of the scene of Mr. Benzing's accident. Dkt. No. 201 ¶ 26. Mr. Smith testified, based on a review of those photos, that the ladder was placed over a burlap covering, it was placed on corrugated metal with high and low parts, and its heels were not affixed to the bridge. *See* Dkt. No. 166-10 at 114:14–117:2. Other witnesses and Defendants' own expert affirmed that description with varying specificity, with some testifying that the covering was a material called "burlene" and not burlap alone. *See* Dkt. No. 166-12 at 84:13–86:10; Dkt. No. 166-11 at 195:21–199:13; Dkt. No. 166-25 at 6–7. Plaintiffs' expert proffered that, under these conditions, "the ladder could shift dramatically unless properly secured" and that the floor covering, whether burlap or burlene, "was susceptible to slippage and movement." Dkt. No. 166-22 at 15. The only evidence Defendants offer to rebut that testimony is the testimony of their own expert, William Meyer. Dkt. No. 204 at 20. Mr. Meyer opined, conclusorily, that "no aspect of the ladder allegedly involved in Martin Benzing's 8/20/19

11

incident was in violation of any requirement under the New York Labor Law, [or] the New York Industrial Code." Dkt. No. 166-24 at 7. The basis for Mr. Meyer's conclusion is that the ladder "appeared to be secured in place," that the ladder was inspected, and that it was regularly used. *Id.* at 8. None of these statements rebut or even address Plaintiffs' contentions that the ladder was placed on an uneven and slippery service without proper footings, in violation of Section 23-1.21(b)(4)(ii).

That said, Plaintiffs still cannot prevail on their section 241(6) claim because they have not established as a matter of law that the violation of section 23-1.21(b)(4)(ii) was the proximate cause of Mr. Benzing's injuries. *See In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 758 F.3d at 210. As set forth above, material factual disputes remain concerning the circumstances and cause (or causes) of Mr. Benzing's fall. These factual disputes preclude summary judgment on Plaintiffs' Section 241(6) claim because, without conclusively establishing the cause of Mr. Benzing's injury, Plaintiffs are unable to establish at this stage of the case that this violation of the industrial code was the proximate cause of such injury.

## IV.    SUMMARY JUDGMENT IS DENIED ON PLAINTIFFS' NYLL SECTION 200 CLAIM

The JV Defendants seek summary judgment on Plaintiffs' claim under NYLL Section 200. Section 200 "is a codification of the common-law duty of property owners and general contractors to provide workers with a safe place to work." *Quishpe v. Urb. Atelier Grp., LLC*, No. 21-CV-02723 (FB) (RER), 2023 WL 5625307, at *3 (E.D.N.Y. Aug. 31, 2023). Claims under section 200 can be brought in two forms: "manner" cases or "premises" cases. *Varga*, 2025 WL 2774261, at *21. Manner cases "arise[]out of alleged defects or dangers arising from a subcontractor's methods or materials." *Id.* (emphasis omitted). Premises cases are based on "a

dangerous condition on the work site." *Wallace v. Nat'l R.R. Passenger Corp.*, 5 F. Supp. 3d 452, 466 (S.D.N.Y. 2014).

Different standards for liability attach to each type of claim. "If a plaintiff's claim arises out of an alleged defect or condition in the methods or materials of the work . . . a party owing a duty under the Labor Law cannot be held liable unless it is shown that the party to be charged exercised some supervisory control over the operation." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, No. 07-CV-01572, 2015 WL 13681019, at *2 (S.D.N.Y. Apr. 21, 2015). In contrast, for defective premises claims, "notice of a dangerous condition is sufficient" to establish liability. *Wallace*, 5 F. Supp. 3d at 467. Finally, "[w]here the injured worker's employer provides the allegedly defective equipment, the analysis turns on whether the defendant owner had the authority to supervise or control the work." *Sochan v. Mueller*, 78 N.Y.S.3d 608, 613 (2018) (analyzing a negligence claim under common-law principles, which apply equally to claims under section 200, *see Quishpe*, 2023 WL 5625307 at *3). But where "the defendant owner provides the allegedly defective equipment, the legal standard is whether the owner created the dangerous or defective condition or had actual or constructive notice thereof." *Id.*

The parties dispute which standard applies to Plaintiffs' Section 200 claim. But under any standard, summary judgment cannot be granted. If, as Plaintiffs allege, the appropriate standard is whether the JV Defendants had sufficient notice of the alleged dangers associated with the ladder, the record is insufficient to make that determination as a matter of law. Similarly, if the relevant standard is whether the JV Defendants "exercised some supervisory control over the operation," *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 2015 WL 13681019, at *2, that too presents a disputed question of fact. *See* Dkt. No. 166-11 at

13

73:11–21 (testimony that the joint venture was responsible for placement of the ladder); Dkt. No. 188-28 at 59:20–23 (SSI employee testimony that he would have addressed safety issues with the ladder if needed). Accordingly, summary judgment is DENIED as to Plaintiffs' Section 200 claim.

## V.    SUMMARY JUDGMENT IS DENIED ON PLAINTIFFS' LOSS OF CONSORTIUM CLAIMS

Finally, Plaintiffs bring a claim for loss of consortium. "A loss of consortium claim represents an injury to the marital relationship." *Simone v. United States*, No. 09-CV-3904 (TCP) (AKT), 2010 WL 11632765, at *16 (E.D.N.Y. June 17, 2010). The claim is a "derivative" one and "depends on the viability of the primary cause of action or the underlying injury." *Quinoy v. Pena*, No. 13-CV-01945 (NSR), 2014 WL 1998239, at *13 (S.D.N.Y. May 14, 2014). The JV Defendants seek dismissal of Plaintiffs' loss of consortium claims on the grounds that they "demonstrated [their] entitlement to summary judgment on the underlying claims." Dkt. No. 182 at 21. That argument must be rejected here because the Court has not awarded summary judgment in the JV Defendants' favor on any of the underlying claims. Accordingly, summary judgment is DENIED as to Plaintiffs' loss of consortium claim.

## VI.    SUMMARY JUDGMENT IS DENIED ON THE JV DEFENDANTS' CLAIMS AGAINST SSI

### A.  Breach of Contract

Defendants seek to hold SSI liable for breach of contract pursuant to the agreement between SSI and the JV Defendants. Dkt. No. 182 at 25. SSI cross-moves for summary judgment on that claim, arguing that the contract was not in effect in August 2019. Summary judgment is not warranted in either party's favor because questions of fact preclude the enforcement of the contract as a matter of law. As an initial matter, the fact that the contract between the parties was allegedly not signed at the time of the incident does not render it

14

unenforceable. "Under New York law, an unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound." *Desiste v. Sobande*, No. 20-CV-06947 (KPF), 2022 WL 4537914, at *9 (S.D.N.Y. Sept. 28, 2022). However, issues "implicating disputed intent are not susceptible to resolution on summary judgment motions." *Nat'l Trends, Inc. v. Krimson Corp.*, No. 91-CV-3178 (KMW) (LB), 1994 WL 97058, at *11 (S.D.N.Y. Mar. 23, 1994); *see also Fin. Cas. & Sur., Inc. v. Zouvelos*, 781 F. App'x 20, 22 (2d Cir. 2019) ("the issue of whether the parties required that an agreement be signed to be considered binding is one of intent, and, therefore, the issue is normally a fact question for the jury to decide."); Dkt. No. 210 at 7 (arguing that SSI only signed the contract in 2021 under duress). Because there are material factual disputes as to whether the JV Defendants and SSI intended to be bound by their contract at the time of the incident, the agreement's enforceability and thus its alleged breach cannot be resolved on summary judgment.

## B. Indemnification

The JV Defendants seek both contractual and common law indemnification from SSI. Dkt. No. 21 at 7–9. For Defendants to prevail on either of these claims, they must establish that they were not negligent. *See Great N. Ins. Co. v. Laboz*, No. 20-CV-09168, 2024 WL 689478, at *9 (S.D.N.Y. Feb. 20, 2024) ("Under New York law, a party cannot receive contractual indemnification from its own negligence. Thus, a party seeking contractual indemnification must prove itself free from negligence."); *Ruvalcaba v. M.N.C. Gen. Contractors Corp.*, No. 21-CV-06162 (OEM) (TAM), 2024 WL 4350490, at *14 (E.D.N.Y. Sept. 30, 2024) ("To establish a claim for common law indemnification, the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident."). For the reasons set forth above, the factual circumstances and causes of the accident

15

in this case remain in dispute.  Accordingly, the JV Defendants cannot establish the requisite lack of negligence required for both contractual and common law indemnification.

### C.  Contribution

Summary judgment is denied on the JV Defendants' contribution claim for substantially the same reason.  Contribution is available as a remedy "where two or more tortfeasors share in responsibility for the same injury." *Girau v. Europower, Inc.*, No. 10-CV-4320 (NSR), 2015 WL 4533783, at *6 (S.D.N.Y. July 24, 2015).  "The crucial element in allowing a claim for contribution to proceed is that the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Id.*  As discussed at length, the cause of Mr. Benzing's injury, and who is at fault for that cause, remains a disputed fact for the jury to decide at trial.  Without this factual predicate, neither the JV Defendants nor SSI can assume or shed liability for contribution as a matter of law. !

## VII.    PLAINTIFFS' PHOTOGRAPHS ARE NOT EXCLUDED

The JV Defendants have moved to exclude certain photographs offered by Plaintiffs, on the grounds that Plaintiffs did not provide metadata for them as ordered by Magistrate Judge Lehrburger.  But the JV Defendants misstate the record.  Judge Lehrburger ordered Plaintiffs to provide any metadata or other authenticating data or represent that no such information has been found. Dkt. No. 106.  Plaintiffs have stated repeatedly, on the record, that neither Plaintiff, nor anyone under their control, took the photographs at issue, that they do not have electronic records of the photographs, and that other witnesses who either took the photographs or were present at the events depicted can authenticate the photographs if offered in evidence at trial.  No more is required.  If the JV Defendants wish to challenge the authenticity or admissibility of these photographs at trial, they may do so through the usual means to raise evidentiary

16

objections, but the Court will not preclude them at this stage as some kind of discovery sanction, which has no basis in the record.

## VIII.  THE DAUBERT MOTIONS

### A.  Legal Standard on *Daubert* Motions

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion" if:

> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The Second Circuit has distilled Rule 702's requirements into three broad criteria: (1) qualifications, (2) reliability, and (3) relevance and assistance to the trier of fact." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018). The party seeking to introduce an expert's testimony bears the burden of establishing the testimony's admissibility by a preponderance of the evidence. *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 220 (S.D.N.Y. 2019).

The Court's role in evaluating expert testimony is to "act[] as a gatekeeper to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Christie's Inc.*, 425 F. Supp. 3d at 220 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). "The ultimate object of the Court's gate-keeping function is to 'make certain that an expert, whether basing testimony upon professional studies or personal experience,

17

employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Roman v. Sprint Nextel Corp.*, No. 12-CV-00276 (VEC), 2014 WL 5026093, at *3 (S.D.N.Y. Sept. 29, 2014) (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

### 1.    Qualifications

The adequacy of an expert's qualifications is "determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the actual subject matter of the witness's testimony." *Karavitis v. Makita U.S.A., Inc.*, 722 F. App'x 53, 55 (2d Cir. 2018). In assessing whether an expert is qualified, "the court's focus should be on 'whether the expert's knowledge of the subject is such that his opinion will likely assist the trier of fact in arriving at the truth.'" *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 589 F. Supp. 3d 302, 329 (S.D.N.Y. 2022) (quoting *Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Bos. Corp.*, No. 12-CV-05803 (JLG), 2013 WL 978980, at *2 (S.D.N.Y. Mar. 12, 2013)). "Courts within the Second Circuit have liberally construed expert qualification requirements when determining if a witness can be considered an expert." *Crown Cork & Seal*, 2013 WL 978980, at *2.

### 2.    Reliability

"To warrant admissibility . . . it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). In *Daubert*, the Supreme Court set forth the following factors as relevant to assessing reliability:

> (1) whether the expert's technique or theory can be or has been tested;
>
> (2) whether it has been subjected to peer review and publication;
>
> (3) whether there is a high error rate for the expert's technique, and whether there are 'standards controlling the technique's operation'; and

(4) whether the expert's technique or theory is generally accepted by the relevant scientific community.

*In re Mirena Ius Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 341 F. Supp. 3d 213, 240 (S.D.N.Y. 2018), *aff'd sub nom. In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113 (2d Cir. 2020) (citing *Daubert*, 509 U.S. at 592–94). These factors are not a "definitive checklist or test." *Daubert*, 509 U.S. at 593. Rather, the Court "should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kumho Tire*, 526 U.S. at 152.

Certain characteristics of expert testimony will render it unreliable. If expert testimony is "speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison," then it must be excluded. *Nachimovsky v. Nike, Inc.*, No. 22-866, 2023 WL 4504461, at *1 (2d Cir. July 13, 2023) (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009)). Similarly, if "the gap between the data and the conclusion drawn by the expert from that data . . . is simply too great," then the Court may exclude the expert's testimony. *Id.* (quoting *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017)).

That said, "the rejection of expert testimony is the exception rather than the rule . . . and the Second Circuit requires that courts assessing the reliability of expert testimony be mindful of the presumption of admissibility of evidence." *Cohalan v. Genie Indus., Inc.*, No. 10-CV-02415 (JMF), 2013 WL 829150, at *5 (S.D.N.Y. Mar. 1, 2013). Contentions "that [an expert's] assumptions are unfounded" other than those described above "go to the weight, not the admissibility, of the testimony." *Id.* Pursuant to this liberal standard, "only flaws in reasoning or methodology 'large enough that the expert lacks good grounds for his or her conclusions' warrant exclusion; otherwise, the court should admit the evidence." *Roman*, 2014 WL 5026093,

19

at *4 (quoting *Amorgianos*, 303 F.3d at 267).  "[O]ur adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony through vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.*

### 3.     Relevance

In addition to evaluating whether expert testimony complies with the requirements of Rule 702, "courts must also determine whether the proffered evidence is relevant" pursuant to Federal Rules of Evidence 401 and 402, "and, if so, whether its probative value is substantially outweighed by the danger of unfair prejudice" pursuant to Rule 403.  *United States v. Gatto*, 986 F.3d 104, 117 (2d Cir. 2021); *see also United States v. Dukagjini*, 326 F.3d 45, 51–52 (2d Cir. 2003) ("Of course, expert testimony, like other forms of evidence, 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.'") (quoting Fed. R. Evid. 403).  Additionally, Rule 702's "requirement that expert testimony 'assist the trier of fact' goes primarily to relevance." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) (quoting *Daubert*, 509 U.S. at 591).  To that end, "'expert testimony that usurps either the role of the trial judge' in determining 'the applicable law or the role of the [trier of fact] in applying that law to the facts before it' is inadmissible because it 'by definition does not aid the [trier of fact] in making a decision.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d at 469 (quoting *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005)).

### B.  Jason Randle

Jason Randle is a Civil Engineer at Robson Forensic, a multidisciplinary forensic investigation firm. Dkt. No. 199 ¶ 5.  Randle specializes in technical investigations and analysis for commercial claims and litigation involving construction site safety practice, including how

industry standards apply to a particular incident. *Id.* He also has professional experience in construction site safety, construction industry regulations, and ladder accidents. *Id.* at ¶ 6. The JV Defendants seek to preclude Randle's testimony on three grounds: (1) he is unqualified, (2) his conclusions rely upon evidence that is inadmissible or lacks probative value, and (3) he impermissibly offers legal conclusions. Dkt No. 186 at 1–2, 7. The Court will preclude certain aspects of Randle's testimony on the grounds that they exceed his qualifications and impermissibly offer legal conclusions, but will allow the remainder of the testimony.

First, while Randle is qualified to offer opinions on safety issues concerning the ladder and construction site, his opinions on the cause of Mr. Benzing's fall exceed the bounds of his expertise. Courts have found biomechanical engineers "qualified to offer testimony regarding the forces generated by certain accidents and the likely effects of such forces on the human body." *Morgan v. Girgis*, No. 07-CV-01960 (WCC), 2008 WL 2115250, at \*5 (S.D.N.Y. May 16, 2008). However, Randle does not purport to have training or expertise in the field of biomechanics, *see* Dkt. No. 198 at 1, 4, and Plaintiffs describe his testimony concerning causation as "only incidental to his report," *id.* at 2, 5. Accordingly, the portions of Randle's testimony concerning whether the conditions he described in fact caused Mr. Benzing's fall are inadmissible. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-5345 (AJN), 2021 WL 5154110, at \*3 (S.D.N.Y. Nov. 5, 2021) ("Even if a witness is otherwise qualified as an expert, where an expert's opinion exceeds the scope of his qualifications, the witness's opinions are subject to exclusion.").

Second, portions of Randle's testimony impermissibly offer legal conclusions. For example, Randle opines that Tully violated NYLL § 240(1). *See* Dkt. No. 166-22 at 12. This testimony provides a legal conclusion concerning one of the allegations in this case. Similarly,

21

Randle provides opinions on Tully's duties. *Id.* at 19. These opinions offer legal conclusions because "[t]he existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the court." *Toretto v. Donnelley Fin. Sols., Inc.*, 583 F. Supp. 3d 570, 592 (S.D.N.Y. 2022). The portions of Randle's testimony that offer legal conclusions are impermissible. *See Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 146 (S.D.N.Y. 2003) ("Although an expert may opine on the ultimate issue of fact, he 'may not give testimony stating ultimate legal conclusions based on those facts.'") (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).

The JV Defendants' other contentions concerning Randle's testimony are either unavailing or go to the weight rather than admissibility of his testimony. First, Randle's reliance on evidence that the JV Defendants allege is inadmissible does not preclude his opinion. "An expert may rely on inadmissible facts or data in reaching his opinion but 'may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.'" *United States v. Walker*, No. 18-3506, 2023 WL 3451419, at *1 (2d Cir. May 15, 2023) (quoting Fed. R. Evid. 703). Accordingly, the admissibility of the evidence that Randle relied on is not a basis to deem any portion of his expert testimony inadmissible. Second, the Court does not agree with the JV Defendants that Randle's proffered testimony is overly speculative or irrelevant. His opinions, as set forth in the report, address central issues in this case, based on the evidence in the record and his expertise as a civil engineer. The proposed testimony is sufficiently reliable and relevant.

### C. William J. Meyer

William J. Meyer is an engineering consultant. Dkt. No. 166-24 at 8. He provides testimony concerning the safety of the ladder and the causes of Mr. Benzing's fall. Plaintiffs seek to preclude his testimony on largely the same grounds as the JV Defendants sought to

preclude Randle's testimony.  First, like Randle, Meyer does not purport to be a biomechanical engineer or medical expert and is thus not qualified to offer testimony concerning the causes of Mr. Benzing's fall or injury.[3]  *See, e.g.*, Dkt. No. 166-24 at 5–6.  Accordingly, the sections of his report and proposed testimony addressing the cause of Mr. Benzing's fall and injury are impermissible.  Second, Meyer also offers impermissible legal conclusions that must be excluded.  *See, e.g.*, *id.* at 5 ("In my opinion, the subject incident did not involve any violation of New York State Labor Law . . .").  Plaintiffs' remaining contentions concerning Meyer's testimony go to the weight not admissibility of his testimony and can be addressed "through vigorous cross-examination [and] presentation of contrary evidence."  *Roman*, 2014 WL 5026093, at *4.

### D.  Robert S. Cargill II

Robert S. Cargill II is a bioengineer who specializes in biomechanical engineering.  Dkt. No. 166-25 at 1.  The JV Defendants proffer his testimony as a biomechanical perspective on the causes of Mr. Benzing's accident.  *Id.*  Plaintiffs seek to preclude his opinions on the grounds that they are "not grounded on sufficient facts or data, are speculative, and/or are not the product of reliable principles and methods."  Dkt. No. 175 at 6.  The Court disagrees.  As laid out in the report, Cargill reviewed evidence in the record and set forth his perspective on the incident based on his expertise as a biomechanical engineer.  These opinions are within the scope of his expertise and are permissible.  *See Manlapig v. Jupiter*, No. 14-CV-00235 (LGS), 2016 WL 916425, at *3 (S.D.N.Y. Mar. 10, 2016) ("In the context of litigation, biomechanical engineers

---

[3] To be clear, this ruling does not preclude Randle or Meyer from offering their expert opinion as to whether, based on their experience in the construction industry and expertise as civil engineers, a fall was hypothetically possible under the conditions at the time of the incident.  However, neither may offer an expert opinion as to whether any of these conditions did or did not in fact cause Mr. Benzing's accident, because that exceeds the bounds of their expertise.

typically are found to be qualified to render an opinion as to the forces generated in a particular accident and the general types of injuries those forces may generate.").  Plaintiffs' contentions again go to the weight and not admissibility of his testimony, and are best explored through vigorous cross-examination.

## CONCLUSION

For the reasons set forth above, summary judgment is DENIED on all claims.  Plaintiffs' motion to preclude the testimony of William J. Meyer is GRANTED in part and DENIED in part.  Plaintiffs' motion to preclude the testimony of Robert S. Cargill II is DENIED.  The JV Defendants' motion to preclude the testimony of Jason Randle is GRANTED in part and DENIED in part.

The Clerk of Court is respectfully directed to terminate Dkt. Nos. 164, 170, 174, 177, 181, and 185.

Dated: March 30, 2026
   New York, New York

             SO ORDERED.

             _____
             MARGARET M. GARNETT
             United States District Judge